UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTONIO T. PERALTA,

                              Plaintiff,

v.                                                      5:14-CV-00068

                                                        (LEK/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York, 13202

HON. RICHARD S. HARTUNIAN             PETER JEWETT, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral

argument was not heard. For the reasons discussed below, it is recommended that the

Commissioner's decision be affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff was born on August 2, 1949. (Administrative Transcript at 41, 263, 299[1].)

Plaintiff completed the 11th grade and is able to read and write "a little bit" and perform simple

math. *Id*. He is able to operate a car, and has worked as a machine operator, a hazardous

materials handler, a roofer, a cook, a baker's assistant, an auto detailer, and a farm worker. (T. at

50-57.) Plaintiff alleges disability due to a back impairment, diabetes, hypertension, gout, liver

problems, and arthritis in the back, hip and shoulder. (T. at 62-66, 303.)

Plaintiff applied for disability insurance benefits and social security income on September

9, 2010, alleging disability as of November 1, 2009. (T. at 299-300.) The applications were

initially denied on December 21, 2010. (T. at 100-01.) Plaintiff requested a hearing which was

held on July 27, 2012, before Administrative Law Judge ("ALJ") Jennifer Gale Smith, who

denied the application in a decision dated September 13, 2012. (T. at 24-31, 37-99.) On

December 20, 2013, ALJ Smith's decision became the final decision of the Commissioner when

the Appeals Council denied Plaintiff's request for review. (T. at 1-6.) Plaintiff commenced this

action on January 22, 2014. (Dkt. No. 1.)

---

[1]      The Administrative Transcript is found at Dkt. No. 10. Citations to the
Administrative Transcript will be referenced as "T" herein.

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.)  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.* (quoting *Perry*, 77 F.3d at 46).

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010);[2] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered

throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are

supported by substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence must also

include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).

However, a reviewing court cannot substitute its interpretation of the administrative record for

that of the Commissioner if the record contains substantial support for the ALJ's decision. *See*

*Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ first determined that Plaintiff did not engage in substantial gainful activity

during the period from his alleged disability onset date of November 1, 2009, through the date of

the ALJ's decision, September 13, 2012. (T at 26.) The ALJ found at step two of the sequential

evaluation that Plaintiff had the "severe" impairments of diabetes and hypertension. (T. at 26-

---

[2]       On Lexis, this published opinion is separated into two documents. The first is
titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7,
2010). It includes only the district judge's short decision adopting the magistrate judge's report
and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp.
2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate
judge's report and recommendation. Westlaw includes both the district court judge's decision
and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*,
717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

27.)  At step three, the ALJ determined that Plaintiff's severe impairments did not meet or

medically equal the criteria of an impairment contained in the Listing of Impairments.  *Id.*  The

ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a

full range of work at all exertional levels, except that Plaintiff should not work at unprotected

heights and should not work around moving machinery.  (T. at 27.)  At the fourth step, the ALJ

concluded that Plaintiff could not perform any of his past relevant work.  (T. at 29.)  At the fifth

step, ALJ Smith applied the framework of the Medical-Vocational Rules (the "grids") to reach

the determination that Plaintiff could make an adjustment to other work existing in significant

numbers in the national economy.  (T. at 30.)  The ALJ then concluded that Plaintiff was not

disabled, and denied his claims for disability benefits and social security income.  (T. at 30-31.)

## IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred at step two of the analysis in failing to determine that

the Plaintiff's conditions of discogenic disease of the lumbar spine, right shoulder injury, and

obesity were severe impairments.  (Dkt. No. 12 at 7-9.)  Plaintiff also asserts that ALJ Smith

erred in relying on the grids at step five of the sequential analysis because the testimony of a

vocational expert was necessary due to Plaintiff's nonexertional limitation of pain.  *Id*. at 9-10.

Defendant contends that the ALJ's decision applied the correct legal standards and is supported

by substantial evidence and thus should be affirmed.  (Dkt. No. 13.)

## V.     DISCUSSION

### A.     Step Two Determination

Plaintiff argues that the ALJ erred in failing to find his conditions of discogenic disease of

the lumbar spine, right shoulder injury, and obesity severe.  (Dkt. No. 12 at 7-9.)  Plaintiff notes

medical records indicate he was treated for "sharp" right shoulder and hip pain, an x-ray imaging study of his shoulder indicates mild degenerative changes of the acromioclavicular ("AC") joint, and an x-ray of his low back shows discogenic disease. (Dkt. No. 12 at 8, citing T. at 372, 385.) Plaintiff further argues that the ALJ did not properly assess his obesity which, combined with his musculoskeletal pain, caused functional limitations that the ALJ did not consider. (Dkt. No. 12 at 8-9.) The Commissioner argues that the ALJ's decision indicates that all of Plaintiff's medical conditions were thoroughly reviewed, and that substantial evidence supports the severity determination. (Dkt. No. 13 at 5.) Additionally, the Commissioner argues that although Plaintiff notes evidence of the existence of other conditions, he did not demonstrate how the right shoulder, low back, and obesity conditions significantly limited his ability to perform any basic work activities. *Id*. The Court agrees with the Commissioner.

At the second step of the evaluation, the medical severity of a claimant's impairments is considered. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." *Id.* at §§ 404.1521(b), 416.921(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out instructions, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id.*; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL

813409, at *6 (E.D.N.Y. July 22, 1998). The claimant bears the burden of presenting evidence to establish severity. 20 C.F.R. § 404.1512(c). The claimant must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp.2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Id*. at 271; S.S.R. 85-28, 1985 WL 56858, at * 2 (1985). For the following reasons, I find that the ALJ's decision at step two is supported by substantial evidence and the Plaintiff has not met his burden regarding the alleged severity of his right shoulder, low back, and obesity conditions.

1. Right Shoulder

Although ALJ Smith did not note Plaintiff's right shoulder injury in her step two determination, the decision is clear that she considered Plaintiff's right shoulder pain and how it impacted Plaintiff's ability to perform basic work activities. (T. at 29.) At the hearing, Plaintiff described a fall he had in October of 2009 while working where he injured his right hip and right shoulder. (T. at 46.) The ALJ discussed Plaintiff's minimal treatment for that right shoulder injury. *Id*. Plaintiff was treated in the Emergency Department at Oswego Hospital on October 30, 2009, for right shoulder and right hip pain. (T. at 363-372.) Plaintiff's pain was noted to be "sharp," but his appearance showed "no pain distress." (T. at 365-66.) His physical exam, including an examination of his musculoskeletal system, was entirely normal. (T. at 366.) X-rays of the right hip and right pelvis were normal, and an x-ray of the right shoulder showed "mild degenerative changes of the AC joint." (T. at 370-72.) He was discharged from the

8

Emergency Department only four hours after arrival with a diagnosis of right hip and right shoulder contusion.  (T. at 364, 366, 369.)

None of Plaintiff's other treatment providers ever mention Plaintiff's shoulder injury or find any limitations related to it.  Instead, there are notations in the medical records where Plaintiff indicted to his primary care physician, Dr. Hafner, in 2011 and 2012, that he is "good" (T. at 404), and "he feels well" (T. at 406, 428, 441).  Dr. Hafner noted Plaintiff "looks well." (T. at 406.)  Plaintiff testified he treated with his primary care physician Dr. Dator as a result of the right shoulder and right hip injury "a couple of times," but Dr. Dator's progress notes show unremarkable physical exams in 2010, with no mention of shoulder problems.  (T. at 47-48, 500-504.)  Dr. Dator's problem list does not mention a shoulder injury.  (T. at 498-99.)  On November 1, 2010, Plaintiff complained of right shoulder pain to consultative examiner, Dr. Shirley-Williams, but on examination he had full range of motion of both shoulders, elbows, forearms, and wrists.  (T. at 382, 384.)  His strength was full and equal in both upper extremities. (T. at 384.)  Hand and finger dexterity were completely intact, and his grip strength was full and equal bilaterally.  (T. at 385.)

Plaintiff testified he was laid off from his job as a hazardous materials worker because of the injury to his right hip and right shoulder.  (T. at 45.)  Upon further testimony, he indicated he did not return to work because in the winter time there were not many jobs available in Oswego, and Oswego Wire closed down.  (T. at 49.)  Plaintiff also testified he received unemployment in 2008 and 2009.  (T. at 44.)

Thus, Plaintiff failed to carry his burden at step two to provide evidence showing that his right shoulder injury was severe or caused functional limitations that precluded him from

performing substantial gainful activity.  Moreover, the ALJ's failure to find his right shoulder injury severe is well-supported by the record.

### 2.     Discogenic Disease of the Lumbar Spine

Regarding Plaintiff's discogenic disease of his lumbar spine, the ALJ referred to an x-ray taken of Plaintiff's lumbar spine on November 1, 2010, at the consultative examination by Dr. Shirley-Williams.  (T. at 28, 386.)  The x-ray showed mild disc thinning at the L4-L5 and L5-S1 vertebrae levels.  (T. at 386.)  The facet and sacroiliac joints were normal, and vascular calcification was noted.  *Id.*  The radiologist's impression was "discogenic disease of the lower lumbar spine."  *Id.*  Upon exam, Dr. Shirley-Williams noted that Plaintiff had difficulty heel-toe walking "because of his ankle discomfort," not because of his spine.  (T. at 383.)  The cervical and lumbar spine on exam showed full flexion and extension, full lateral flexion bilaterally, and full rotary movement bilaterally.  (T. at 383-84.)  His thoracic spine showed no abnormality.  (T. at 384.)  His deep tendon reflexes were physiologic and equal in his lower extremities, and his strength was full and equal in his lower extremities.  *Id.*  The straight leg raise testing was negative bilaterally, and he had no sensory deficits.  *Id.*  No other medical provider ever commented on or treated him for low back pain, and Plaintiff confirmed by his testimony that he did not treat for his low back pain, or even use a hot or cold pack or do stretches.  (T. at 91-92.)

Here, the objective evidence overwhelmingly supports the ALJ's conclusion that Plaintiff's discogenic disease of his lumbar spine was a nonsevere impairment.  (T at 27.)  Plaintiff had minimal treatment, if any, and he does not make any reference to the objective medical record other than the November 1, 2010, x-ray showing mild findings, in arguing that his lumbar spine was a severe impairment.  (Dkt. No. 12 at 7-9.)  However, Plaintiff may not prove

his impairment was severe without pointing to medical signs and objective medical test findings establishing the existence of an underlying condition reasonably expected to produce the symptomatology alleged.  20 C.F.R. § 404.1529(b); S.S.R. 96-7p, 1996 WL 374186, at *2, (S.S.A. July 2, 1996).

### 3.    Obesity

Plaintiff argues that the ALJ did not properly determine the impact of Plaintiff's obesity on his ability to function.  (Dkt. No. 12 at 8-9.)  The Commissioner asserts that the ALJ's decision shows that she took Plaintiff's obesity into consideration, and the limitations caused by his obesity were factored into the treating and examining physicians' reports.  (Dkt. No. 13 at 7.)  The Commissioner is correct.

"Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) & *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Stemple v. Astrue*, 2007 WL 601566, at *10 (D. Md. Feb. 26, 2007) (noting that "some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity") (citations omitted).

Here, the ALJ considered Plaintiff's obesity, noting that Plaintiff's treating physician, Dr. Dator, had assessed a body mass index of 34.  (T. at 29, 503.)  The ALJ also noted frequent mention in the treatment record of Plaintiff's weight.  (T. at 29.)  Far from ignoring this evidence,

the ALJ noted that "by weighing these opinions, the undersigned has likewise fully considered [Plaintiff's] obesity." (T. at 29.) The ALJ thus held that while she took Plaintiff's obesity into account, the limitations caused by his obesity had already been factored into the treating and examining doctors' reports. (T. at 29.) Further, while Plaintiff notes an elevated ALT test, he does not point to any functional limitations caused by Plaintiff's obesity. (Dkt. No. 12 at 8.) Accordingly, consistent with the Commissioner's policy, S.S.R. 02-1p, 2000 WL 628049, at * 4 (S.S.A. Sept. 12, 2002), the ALJ did not make assumptions about the severity or functional effects of Plaintiff's obesity. Rather, the ALJ relied on the treating and examining physicians' opinions which all noted Plaintiff's obesity, but routinely found virtually no functional limitations. (T. at 366, 376, 385, 392, 406, 413, 424, 428.)

Plaintiff had the burden of presenting evidence which shows that an impairment is severe. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Plaintiff failed to carry this burden that any of these conditions were severe either on their own or in combination with his other medical conditions. The medical evidence in the record showed that Plaintiff's discogenic disease of the lumbar spine, right shoulder injury, and obesity, singularly or in combination with other impairments, did not limit his ability to do basic work activities. Rather, these three conditions did not require extensive medical treatment and Plaintiff did not take medications to address any of them. While Plaintiff reported pain in his back and shoulder, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

Accordingly, the Court agrees with the Defendant that the ALJ correctly found that

Plaintiff's discogenic disease, shoulder injury, and obesity were not "severe" impairments, singularly or in combination with each other or other impairments, as they did not significantly limit his physical or mental capacity to perform basic work functions.

### B.    Step Five Determination

Plaintiff also challenges the ALJ's step five determination which was based upon an application of the Medical-Vocational Guidelines (the "grids").  (Dkt. No. 12 at 9-10; T. at 30.) The Court finds no fault with the ALJ's determination at step five.

Generally, the Commissioner meets her burden at the fifth step by resorting to the applicable grids.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)).  The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience.  *Id.*  "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy."  *Id*.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2 (the grids provide a "framework for consideration of how much the individual's work capacity is further diminished in terms of any types of jobs

that would be contraindicated by . . . nonexertional limitations."). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). Where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work, the testimony of a vocational expert must be obtained. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not

14

automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 411. Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id*.

Plaintiff argues that the ALJ's reliance on the grids was in error because the Plaintiff suffers from significant pain, a nonexertional limitation, and therefore a vocational expert should have been consulted. (Dkt. No. 12 at 9.) The Court does not agree. Plaintiff asserts that "throughout the record" it was revealed that "Plaintiff was experiencing significant pain." *Id*. at 10. Plaintiff then cites his own testimony, the report of the shoulder x-ray of October 30, 2009, and consultant Dr. Shirley-Williams' report which was based upon Plaintiff's subjective complaints. *Id*. (citing T. at 46, 76, 89, 91, 372, 383, 385). Additionally, despite Dr. Shirley-Williams' findings of chronic pain, she opined that Plaintiff had "no limitations based on the findings of today's examination." (T. at 385.) Dr. Shirley-Williams was the only medical professional to provide opinion evidence. None of Plaintiff's treating providers provided any opinion as to Plaintiff's limitations, nor did they comment on the impact of Plaintiff's pain on his functional abilities.

Notably, the ALJ found Plaintiff's subjective complaints of pain not credible (T. at 28), and Plaintiff does not challenge that finding. The record clearly demonstrates that Plaintiff's reports of pain were not consistent with the medical evidence. While Plaintiff complained of hip pain, the x-rays of his hip and pelvis were normal. (T. at 370-71.) Regarding his shoulder and low back complaints of pain, the x-rays showed only mild degenerative changes. (T. at 372, 386.) Plaintiff reported to treating providers that he felt "good" or "well." (T. at 392, 404, 406,

15

441.) He could drive, bathe, dress and feed himself. (T. at 79, 310.) He could cook, shop, go

out alone, do dishes and laundry, sweep and mop. (T. at 80-82, 310-312.) He could occasionally

go fishing, and he spent time with family and friends. (T. at 313.) Since the ALJ declined to

find Plaintiff's complaints of pain credible, there is no error in the ALJ's determination that pain

did not deprive Plaintiff of a meaningful employment opportunity. *Selian*, 708 F.3d at 421-22

(no error in ALJ's conclusion that pain did not deprive plaintiff of a meaningful employment

opportunity where ALJ declined to find plaintiff's testimony about pain credible). Further, the

ALJ determined Plaintiff had the RFC "to perform a full range of work at all exertional levels"

and considered his complaints by finding that Plaintiff "should not work at unprotected heights

and should not work around moving machinery." (T. at 27.) Plaintiff likewise does not

challenge the RFC finding.

The Court finds substantial evidence supports the ALJ's finding that the Plaintiff's

nonexertional limitations "have little or no effect on the occupational base of unskilled work at

all exertional levels." (T. at 30.) As noted, the ALJ took into account Plaintiff's nonexertional

limitations by restricting him from working near unprotected heights and moving machinery. (T.

at 27.) Citing S.S.R. 85-15, 1985 WL 56857 (S.S.A. 1985), the ALJ indicated that a person with

those restrictions "is an example of someone whose environmental restriction does not have a

significant effect on work that exists at all exertional levels." (T. at 30.) The ALJ properly

conducted an erosion-of-the-occupational-base analysis and found, based upon substantial

evidence of record, that Plaintiff's nonexertional limitations were not significant because he

found the Plaintiff's limitations matched the parameters of the grids. (T. at 30; S.S.R. 85-15,

1985 WL 56857, at * 3.)

Therefore, substantial evidence supports ALJ Smith's finding that Plaintiff's nonexertional impairments did not significantly reduce his occupational base, and the ALJ's reliance on the grids to provide the framework for determining that his nonexertional impairments were not disabling was correct. Under these circumstances, testimony of a vocational expert or other similar evidence regarding the existence of jobs Plaintiff can perform in the economy is unnecessary. The ALJ also correctly considered the Plaintiff's age, education, work experience, and the RFC, and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T. at 30.) As such, the ALJ's decision was based upon correct legal standards and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 12, 2015
     Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge